WINTER et al. v. BOSTWICK et al.

(Circuit Court of Appeals, Seventh Circuit. December 8, 1913.)

No. 1830.

1. APPEAL AND ERROR (§ 242*) — NECESSITY OF RULING AND OBJECTIONS IN TRIAL COURT.

Where complainants moved to amend their bill, but the record did not show that any ruling was made on the motion that complainants asked for a ruling or assigned error on the ground that the court did not rule, nor because the amendment was not allowed, their right to amend could not be reviewed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1417–1425; Dec. Dig. § 242.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. APPEAL AND ERROR (§ 1012*)—FINDINGS—REVIEW.

A finding on an issue of fact will not be disturbed on appeal unless it is clearly against the weight of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3990–3992; Dec. Dig. §`1012.*]

3. CANCELLATION OF INSTRUMENTS (§ 43*)—CONTRACT TO PURCHASE—RESCISSION—NOTICE—BILL.

Where a notice of intent to rescind a contract for the purchase of mining property alleged as a ground for rescission the vendor's fraudulent representations as to the title, and the bill to enforce such rescission expressly followed the notice and in terms limited the claim for relief to the charge of fraud, complainants could not successfully enforce a right to rescind because of failure of the vendor's title.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 96–99; Dec. Dig. § 43.*]

Appeal from the Circuit Court of the United States for the Western District of Wisconsin; A. L. Sanborn, Judge.

Action by Joseph H. Winter and another against Joseph L. Bostwick and another, as administrators of the estate of Joseph M. Bostwick, deceased, and others. From a decree in favor of defendants, complainants appeal. Affirmed.

William P. Belden and Young & Bell, all of Ishpeming, Mich., for appellants.

H. L. Butler, of Madison, Wis., George G. Sutherland, of Janesville, Wis., and John M. Olin, of Madison, Wis., for appellees.

Before SEAMAN and KOHLSAAT, Circuit Judges, and LANDIS, District Judge.

LANDIS, District Judge. This appeal is from a decree dismissing a bill for the rescission of a contract for the acquisition by the complainants of mining rights, for the recovery of purchase money paid therefor, and for moneys claimed to have been expended by complainants in the development and operation of the property.

In June, 1907, complainants, citizens of Michigan, entered into negotiations with the individual defendants, citizens of Wisconsin for the property in question, being a zinc mine in Lafayette county, Wis. The negotiations resulted in a contract in writing, of date July 3, 1907, which contract covenanted that the individual defendants were the owners of all the capital stock of the Baxter Mining Company; that that corporation was the owner of a lease, for mining purposes, of the W. ½ of the N. E. ¼ of section 29, township 2 N., R. 1 E., which lease was executed by James and Mary Baxter to William F. Palmer, October 14, 1904, and by him assigned to the Baxter Mining Company; that the Baxter Company was also the owner of a sublease, for mining purposes, of the E. ½ of the N. E. ¼ of section 29, township 2 N., R. 1 E., executed by the American Lead & Zinc Mining Company to the Baxter Company, and that the Baxter Company was also the owner of certain personal property described, being machinery, equipment, etc., having to do with mining operation.

The contract then provided that the defendants (for considerations

hereinafter to be mentioned) granted to complainants "the right to purchase, at their option, the entire capital stock of the Baxter Company at any time prior to April 1, 1908," to the end that said complainants "may thereby become the owners of all the property and rights" above mentioned. "As a consideration of such option," complainants agreed to pay defendants $10,000 on the execution and delivery of the contract.

It was further provided that, in case the complainants "elect to purchase the capital stock of the Baxter Company under the option herein given," they shall pay defendants, as a consideration therefor, the $10,000 mentioned above as the first payment, $40,000 on or before January 1, 1908, and $50,000 on or before April 1, 1908. It was also agreed that (in the event the·complainants should elect to exercise their option to purchase) the defendants should further be entitled to receive $300,000, and the complainants $700,000, of the $1,000,000 capital stock of a corporation to be organized by all the parties, and to which corporation was to be conveyed the property to be acquired by the complainants under the contract.

There are other provisions for the complainants' taking possession on the execution of the contract, for their operation and development of the property, for the safeguarding of the rights of all the parties by the deposit of moneys received from sales of ore, for the keeping of accounts, etc., and it was provided that complainants might cancel the contract at any time by giving ten days' written notice, in which event complainants were to forfeit all amounts paid by them either as purchase price or expended on the property, and all net earnings from operation. Provision was also made for the forfeiture by complainants of all their rights, including all payments made, in case they should fail to perform their obligations to the defendants and continue in default for five days after written notice thereof.

Another provision of the contract was as follows:

"19. The said first parties [defendants] undertake and agree that said Baxter Mining Company is and shall be free from indebtedness, and that the property to be transferred hereunder is unincumbered, and that the title of said Baxter Mining Company to said leases is clear and unimpaired."

Simultaneously with the execution of the contract, complainants made the first payment of $10,000 and went into possession of the property. The work of operation and development continued therefrom until about ten days preceding January 1, 1908, the date fixed for the second payment. On December 31, 1907, complainants gave defendants written notice that:

They "had elected to and do hereby rescind the contract entered into with you on the third of July, 1907, relating to the Baxter mine property, and that we have filed our bill of complaint in the Circuit Court of the United States for the Western District of Wisconsin, in equity, to declare and establish such·rescission and cancellation of said contract, by reason of your false and fraudulent representations which induced us to execute the same, all of which are fully set forth in said bill of complaint."

On the date of this notice the bill was filed. It alleged, in effect, that the complainants had been induced to execute the contract by defendants' false representations as to ore conditions and as to title;

averred that complainants had expended large sums in operating and developing the property, as by the contract they were required to do; set forth their discovery of the fraud, followed by negotiations between the parties, in November and December, for a new agreement to take the place of the one of July 3d; the breaking off of these negotiations; and the service of the notice. Rescission is prayed for.

The specific charge of fraud as to title was that the defendants had represented, in effect, that the Baxter Company's lessor, James Baxter, had a perfect title to the 80 acres covered by his lease to the company, whereas, as alleged, he had record title to but half of that parcel; and that in November, after the contract was executed, certain heirs of one Patrick Whaley, who was Baxter's grantor, had started suit, claiming a three-tenths ownership thereof.

[1] The answer denied all material averments of the bill, and there was a cross-bill, which, however, having been dismissed, need not be considered here. The trial judge found against the complainants on the issue of fraud, both as to the ore conditions and as to title. He also held that complainants were not entitled to a decree for breach of the contract in defendants' failure to furnish a marketable title, basing this ruling on the ground, among others, that the bill and notice of rescission made no claim for relief therefor. After his opinion was announced, and before the decree was entered, complainants filed a "motion to amend" the bill by adding a claim of "right to rescind the contract in reliance upon the rights given complainants by its terms, because of the failure of the title of defendants, who have not a marketable title to said Baxter lease." No ruling appears to have been made on this motion; nor does the court appear to have been asked for a ruling; nor is error assigned on the ground that the court did not rule, nor because the amendment was not allowed, in view of which, although considerable space in the briefs is devoted to an argument on this alleged error, the question is not before us for consideration.

Error is assigned on the holding that the defendants' breach in not furnishing a marketable title was not claimed in the bill and notice, and on the finding that there was no fraudulent representation as to title. Error is not assigned on the finding that there was no fraud in the representations as to ore deposits.

[2] The rule is that a finding of the trial court on an issue of fact will not be disturbed on review, unless the finding is clearly against the weight of the evidence. The record here discloses that, when the question of title was discussed by the parties during the preliminary negotiations and at the time the contract was executed, the defendants' assertions respecting the title were coupled with statements by them that they had been advised by their attorneys that the title was good. No fair reading of the evidence will justify the conclusion that what they said on this subject was, or purported to be, their own independent assertion of fact, as distinguished from a statement of what their attorneys had advised them. And in determining the effect on this question of fraud to be given to paragraph 19 quoted above (the meaning of which, standing alone, is not free from ambiguity), the trial court was not at liberty to disregard the evidence of defendants' state-

ments to complainants as to attorneys' opinions made during the negotiations and when the contract was signed. Moreover, on those occasions, the complainants were accompanied by their attorney, while the defendants had no attorney, and the contract, including paragraph 19, was drawn by the complainants' attorney after he, as well as the complainants, had heard the defendants' statements as to what they had been advised by their attorneys respecting the title.

[3] As to the error alleged on the ruling that the notice and bill did not demand rescission for failure of title, it will be observed the notice is expressly limited to the charge of fraud.

Now, while it may be possible that a complainant's rights will not necessarily be circumscribed within the strict letter of a notice of rescission (which we do not decide), and that his rights are to be ascertained from the bill filed in pursuance to such notice, still it must be apparent that to broaden those rights by this process, beyond the scope. of the notice, as declared by its express language, it is at least incumbent on the complainant to tender a bill fairly open to the construction insisted upon. The complaint in this case sets out the representations as to title; avers that except therefor complainants would not have signed the contract without an examination of the title; alleges that complainants believed such representations to be true, and that their confidence in the truth thereof was strengthened by the action of the defendants in the insertion of covenants of warranty, and by the further fact that complainants were informed that defendants were men of integrity and good financial standing. The bill then proceeds:

"Your orators expressly allege, however, that they would not have signed said contract in reliance only upon said covenants of warranty, but that they signed the same because they believed the statements of said defendants hereinbefore set forth to be true, and that these statements constituted the inducements which led your orators to execute said contract at the time and under the circumstances in which it was executed, as hereinafter set forth."

It is also alleged that some time after the execution of the contract the complainants received the abstract, and that their attorney found that it did not show perfect title in the lessors; that the Whaley suit was begun; that then there were the negotiations for a new agreement, which negotiations came to nought, and further:

"Your orators allege that the execution of said contract [of July 3d] was induced by the false and fraudulent representations so made by the defendants and their agents, and that this fraud vitiates said contract, and that your orators are entitled, for these reasons, to have said contract canceled and rescinded, and that they ought, in equity, to be relieved from the harsh and unjust terms of said agreement. And your orators hereby elect to rescind and repudiate said contract and all liability thereunder, and ask the aid of equity to declare and establish such rescission and to protect the rights of your orators."

It thus appears that, instead of broadening the ground for rescission set out in the notice, the bill expressly follows the notice and in terms limits the claim for relief to the charge of fraud. Nowhere are there any words susceptible to the construction that the complainants had in mind the presentation of a case for failure of title.

We are of opinion, therefore, that error is not well assigned, and the decree of the District Court is affirmed.